1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
3  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 8th Floor
4  Los Angeles, California  90067-6035
   Telephone:     (310) 553-6700
5  Facsimile:     (310) 246-6779

6  Attorneys for Twentieth Century Fox Film
   Corporation; TFCF Corporation; TFCF Entertainment
7  Group, LLC; 20th Century Studios, Inc.; and The
   Walt Disney Company

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11

12  JAMES E. THOMAS, an individual, and          Case No. 3:21-cv-02720-LB
    JOHN C. THOMAS, an individual,
13                                                **DEFENDANTS' NOTICE OF**
                                                  **MOTION AND MOTION TO**
14                    Plaintiffs,                 **DISMISS FOR IMPROPER VENUE**
                                                  **OR, IN THE ALTERNATIVE, TO**
15         v.                                     **TRANSFER TO THE CENTRAL**
                                                  **DISTRICT OF CALIFORNIA;**
16  TWENTIETH CENTURY FOX FILM                    **MEMORANDUM OF POINTS AND**
    CORPORATION, a corporation; TFCF              **AUTHORITIES**
17  CORPORATION, a corporation; TFCF
    ENTERTAINMENT GROUP, LLC, a
18  corporation; 20TH CENTURY STUDIOS,            Date:    May 27, 2021
    INC., a corporation; THE WALT DISNEY          Time:    9:30 a.m.
19  COMPANY, a corporation; and DOES 1-10,        Judge:   Hon. Laurel Beeler
    inclusive,                                    Courtroom:  B, 15th Floor
20
21                    Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF THE ISSUES ......................................................................... 2

III. FACTUAL BACKGROUND ............................................................................... 2

    A. The Thomases Seek To Prematurely Terminate Their Copyright Grant. ............... 2

    B. The Thomases File First By Two Hours—In An Improper Venue—
       Through Sharp Practices Of Their Counsel. ........................................................... 3

IV. ARGUMENT ....................................................................................................... 5

    A. The Court Should Dismiss This Improperly Filed Action. .................................... 5

        1. *The Northern District Is An Improper Venue.* ............................................. 6

        2. *The Court Should Dismiss Rather Than Transfer The Action.* .................... 8

    B. Alternatively, This Action Should Be Transferred To The Central District
       Of California Because The Northern District Is An Inconvenient Venue. ............ 10

        1. *This Dispute Could Have Been Brought In The Central District.* ............. 11

        2. *Considerations Of Convenience And Fairness Support Transfer To
            The Central District.* ............................................................................... 12

V. CONCLUSION ................................................................................................... 16

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4
*Altin Havayolu Tasamaciligi Turizm Ve Tic v. Sinnarajah*,
   2008 WL 691851 (N.D. Cal. Mar. 12, 2008) ................................................................. 9

5

6
*Batjac Prods. Inc. v. GoodTimes Home Video Corp.*,
   160 F.3d 1223 (9th Cir. 1998) ...................................................................................... 3

7
*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) ....................................................................................... 7, 8, 11

8

9
*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*,
   106 F.3d 284 (9th Cir. 1997) ........................................................................................ 6

10
*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...................................................................................................... 7

11

12
*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998) ...................................................................................................... 7

13

14
*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ............................................................................................ 8, 11

15

16
*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ................................................................................ 12, 13

17
*Kaia Foods, Inc. v. Bellafiore*,
   70 F. Supp. 3d 1178 (N.D. Cal. 2014) ......................................................................... 6

18

19
*Kalantari v. NITV, Inc.*,
   352 F.3d 1202 (9th Cir. 2003) ...................................................................................... 3

20

21
*Metz v. U.S. Life Ins. Co. in City of N.Y.*,
   674 F. Supp. 2d 1141 (C.D. Cal. 2009) ................................................................ 12, 14

22
*Mitchell v. Deutsche Bank Nat'l Tr. Co.*,
   2015 WL 12867746 (C.D. Cal. Oct. 29, 2015) ........................................................... 15

23

24
*Perkins v. Benguet Consol. Mining Co.*,
   342 U.S. 437 (1952) ...................................................................................................... 8

25

26
*PHH Mortg. Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*,
   2016 WL 1588270 (N.D. Cal. Apr. 20, 2016) .............................................................. 7

27
*Piedmont Label Co. v. Sun Garden Packing Co.*,
   598 F.2d 491 (9th Cir. 1979) ........................................................................................ 6

28

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Ryan v. Hyden*,
4
    2012 WL 3202598 (S.D. Cal. Aug. 3, 2012) ............................................................. 9

5

*Saunders v. USAA Life Ins. Co.*,
    71 F. Supp. 3d 1058 (N.D. Cal. 2014) ................................................................. 10
6

7
*Shalaby v. Newell Rubbermaid, Inc.*,
    2007 WL 3144357 (N.D. Cal. Oct. 24, 2007)..................................................... 11

8
*Stohl v. Magic Mountain*, LLC,
    2019 WL 498993 (E.D. Cal. Feb. 8, 2019) ............................................................ 7
9

10
*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ............................................................................................ 10

11
*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) .............................................................. 14
12

13
*Wood v. Santa Barbara Chamber of Com., Inc.*,
    705 F.2d 1515 (9th Cir. 1983).............................................................................. 9
14

15
**Statutes**

16
17 U.S.C. § 203 ...................................................................................................... 2, 3

17
28 U.S.C. § 1331 ....................................................................................................... 11

18
28 U.S.C. § 1338 ....................................................................................................... 11

19
28 U.S.C. § 1391 ......................................................................................................... 6

20
28 U.S.C. § 1400 ......................................................................................................... 6

21
28 U.S.C. § 1404 ................................................................................................. 10, 12

22
28 U.S.C. § 1406 ..................................................................................................... 8, 11

23
**Other Authorities**

24
14D Charles Alan Wright, Fed. Prac. & Proc. § 3812 (4th ed., 2021 update)................................. 7

25
Phillips & Stevenson, Fed. Civ. Proc. Before Trial (The Rutter Group 2021) Venue
26
    Based on Residence, § 4:230 .................................................................................. 7

27

28

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD, PLEASE TAKE**

**NOTICE THAT** on May 27, 2021, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom B of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Ave., 15th Floor, San Francisco, CA 94102, Twentieth Century Fox Film Corporation, TFCF Corporation, TFCF Entertainment Group, LLC, 20th Century Studios, Inc., and The Walt Disney Company will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(3) for an order dismissing this action on the ground that its venue is improper; or in the alternative, to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1406(a); or, in the alternative, to transfer to the Central District of California for the convenience of parties and witnesses under 28 U.S.C. § 1404(a) (the "Motion").

The Motion seeks dismissal of this action for improper venue or, in the alternative, a transfer of this action to the Central District of California for improper and/or inconvenient venue.

## I.  **INTRODUCTION**

James and John Thomas seek to force the 20th Century Parties[1] to litigate in a venue that has no connection whatsoever to this dispute.  After having been notified by 20th Century of its intent to file suit, counsel to the Thomases deceptively fended off 20th Century from filing first under the pretense of settlement negotiations and raced to file this action in the Northern District of California—two hours before 20th Century filed suit in the Central District of California. These bad faith sharp tactics are unavailing to secure venue and require the 20th Century Parties to litigate in a district unmoored from the underlying controversy—all while a proper and convenient forum, where the parties, counsel, witnesses, and evidence are located, lies in the Central District.

Because the Thomases forum shopped themselves into an improper venue, the Court should dismiss this action.  In the alternative, and at a minimum, the Court should transfer this

---

[1] The term "20th Century Parties" denotes, in the collective, Twentieth Century Fox Film Corporation; TFCF Corporation; TFCF Entertainment Group, LLC; 20th Century Studios, Inc.; and The Walt Disney Company.  The Thomases sued this suite of entities, notwithstanding that Twentieth Century Fox Film Corporation ("20th Century") is the only necessary party.

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

action to the Central District of California, where this litigation belongs.

## II.   STATEMENT OF THE ISSUES

Whether this Court should:

(1)   Dismiss this action for improper venue where the Northern District of California has no ties to the parties or their dispute, and the plaintiffs deliberately avoided the natural forum for this litigation, in which they themselves reside; or

(2)   In the alternative, transfer this action out of the Northern District for improper venue, based on these same deficiencies; or

(3)   In the alternative, transfer this action out of the Northern District for the convenience of the parties and in the interest of justice, where litigating in the Northern District imposes additional burdens on all parties, counsel, and prospective witnesses, and the forum has no stake in the controversy.

## III.   FACTUAL BACKGROUND

### A.   The Thomases Seek To Prematurely Terminate Their Copyright Grant.

The Thomases are the authors of the screenplay entitled "Hunters" (the "*Hunters* Screenplay"). Compl. ¶ 7. On April 16, 1986, they granted 20th Century the rights to the *Hunters* Screenplay (the "Grant"), including the right of publication. *Id.* ¶¶ 7, 27-28; Declaration of Thomas Kennedy ("Kennedy Decl.") ¶¶ 3-4, Ex. A. The *Hunters* Screenplay was rewritten several times by the Thomases on a work made for hire basis, and this iterative rewriting process yielded the screenplay for the original *Predator* film. *See* Compl. ¶ 29; Declaration of Marc Toberoff ("Toberoff Decl"), Dkt. 13, Ex. A ¶¶ 17-19. 20th Century released *Predator* in theaters on June 12, 1987. Compl. ¶ 29.

On June 9, 2016, the Thomases served on 20th Century a notice of termination of the Grant, with a stated termination date of April 17, 2021 ("Notice One"). *Id.* ¶¶ 31-32; Kennedy Decl., Ex. B. Section 203 of the Copyright Act allows authors and their heirs to terminate certain copyright transfers after a designated period of time. 17 U.S.C. § 203. But, as 20th Century

explained to the Thomases,[2] Notice One was premature: it purported to terminate the Grant thirty-five years after its execution, whereas Section 203 allows for termination of a grant covering the right of publication only during a five-year window commencing the earlier of forty years from execution or thirty-five years from publication. *Id.* § 203(a)(3); Compl. ¶¶ 34, 36; Kennedy Decl., Exs. E & F.  In the case of the *Hunters* Screenplay, forty years from the Grant's execution will not pass until April 2026, and thirty-five years from publication—which occurred with the June 1987 *Predator* film release—will not pass until June 2022.  *See Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1231 (9th Cir. 1998) ("[P]ublication of the motion picture publishes the screen play to the extent that it is incorporated into the movie."); *Kalantari v. NITV, Inc.*, 352 F.3d 1202, 1204 n.1 (9th Cir. 2003) ("'Publication,' in the case of a motion picture, includes offering to distribute copies for the purpose of public showing in theaters.").  Therefore, Notice One, with its purported termination date in April 2021, is premature and invalid.

On January 12, 2021, after being informed of the invalidity of Notice One, the Thomases responded by serving two more notices of termination, with stated termination dates of June 14, 2022 ("Notice Two") and January 13, 2023 ("Notice Three"), respectively.  Compl. ¶ 35; Kennedy Decl., Exs. C & D.

**B.** **The Thomases File First By Two Hours—In An Improper Venue—Through Sharp Practices Of Their Counsel.**

In a counter-notice executed on March 25, 2021, 20th Century identified the deficiencies across all three notices, including that Notice Two was served less than two years before its stated termination date in violation of 17 U.S.C. § 203(a)(4)(A).  Compl. ¶ 36; Kennedy Decl., Ex. F. On March 25, 2021, counsel for 20th Century caused the counter-notice to be served on the Thomases at their designated address, which was their counsel's office in the Central District.

---

[2] The Thomases cry foul at the timing of 20th Century's initial counter-notice, served January 13, 2021.  Pls.' Mot. for Prelim. Inj., Dkt. 12, at 1; *see* Kennedy Decl. ¶ 4, Ex. E.  But Section 203 permits service of a termination notice up to *ten years* prior to the effective date, and grantees have no obligation to engage in such premature discussions over termination.  *See* 17 U.S.C. § 203(a)(4)(A).  In any event, the timing of 20th Century's counter-notice is irrelevant to the merits of the parties' termination dispute.

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

Declaration of Daniel M. Petrocelli ("Petrocelli Decl.") ¶ 5.  That day, 20th Century's counsel also emailed the Thomases' counsel a courtesy copy of the counter-notice.  *Id.*  The Thomases' counsel responded the next day, saying that he was leaving on a two-week multistate skiing vacation, but they could "talk or Zoom the week of April 12 and hopefully resolve what [he] believe[s] is essentially an entertainment transactional matter."  *Id.* ¶ 6.  Then on April 7, 20th Century's counsel caused to be served a revised counter-notice on the Thomases and emailed courtesy copies to their counsel.[3]  *Id.* ¶ 7.

On April 13, when the Thomases' counsel returned from vacation, counsel for the parties conferenced by telephone to discuss the termination dispute.  *Id.* ¶ 8.  During this call, counsel for 20th Century informed the Thomases' counsel that unless his clients were willing to withdraw Notice One, which asserted an erroneous termination date of April 17, 2021, 20th Century intended to file a declaratory relief action before the end of the week, *i.e.*, on or before April 16, 2021.  *Id.*  The Thomases' counsel responded that he would not withdraw the notice, reiterated that he viewed this as an entertainment transactional matter, and advocated that litigation would be counterproductive to reaching an agreement.  *Id.*  20th Century's counsel suggested to the Thomases' counsel that he should promptly make a proposal to resolve the matter.  *Id.*

On April 14, the Thomases' counsel followed up to say that he was working on the financial proposal.  *Id.* ¶ 9.  Counsel for 20th Century inquired when the proposal would be ready, and the Thomases' counsel said that it would be ready later that day or on the following day (*i.e.*, April 15).  *Id.*  20th Century's counsel then emailed the Thomases' counsel some follow-up comments about the disputed issues and invited him to elaborate further.  *Id.*  While awaiting the Thomases' proposal, 20th Century's counsel proceeded to finalize the complaint for declaratory relief in the Central District to be filed by the end of week, subject to the possibility that the impending proposal might present a clear opportunity for prompt resolution.  *Id.* ¶ 10.

On April 15, around 10:00 a.m., the Thomases' counsel transmitted to 20th Century's

---

[3] The only revision was that the exhibits to the counter-notice, which were omitted from the March 25 service, were included.

1    counsel the promised proposal. *Id.* ¶ 11.  That same day—just a few hours after sending their

2    proposal, before 20th Century had the chance to respond to the proposal, and without any

3    warning—the Thomases filed this action in the Northern District of California (the "Northern

4    District Action").  *Id.* ¶ 12.  Two hours later, and one hour after learning of the filing from a

5    media inquiry, 20th Century filed its declaratory relief action in the Central District of California

6    (the "Central District Action").  *Id.* ¶¶ 12, 14; Toberoff Decl. ¶¶ 5-6, Ex. A.  20th Century

7    promptly filed a Notice of Pendency of the related actions in each jurisdiction.  Petrocelli Decl. ¶

8    18; *see* Dkt. 17.

9           20th Century filed its action in the Central District because the Thomases and 20th

10   Century are located there, and the events giving rise to the parties' dispute occurred there.

11   Petrocelli Decl. ¶¶ 2-5; Kennedy Decl. ¶¶ 3-4; Compl. ¶ 9 (James Thomas "resides . . . in the

12   County of Santa Barbara"); Compl. ¶ 10 (John Thomas "resides . . . in the County of Santa

13   Barbara"); *see also* Compl. ¶¶ 11-12, 15 (Twentieth Century Fox Film Corporation, 20th Century

14   Studios, Inc., and The Walt Disney Company have their principal place of business in Los

15   Angeles County, California).[4]  By contrast, no party resides in the Northern District, and none of

16   the events underlying this dispute occurred within the Northern District.  *See* Compl. ¶¶ 9-15;

17   Petrocelli Decl. ¶¶ 2-5; Kennedy Decl. ¶ 3-4.

18   **IV.    ARGUMENT**

19          **A.    The Court Should Dismiss This Improperly Filed Action.**

20          The Thomases have pursued a calculated strategy to dodge the one and only proper forum

21   for this litigation in favor of what they apparently perceive as a more favorable venue.  In so

22   doing, the Thomases brought suit in an improper venue that bears no relevant connection to any

23   party or any conduct underlying their claims, falling far short of the required statutory nexus.  The

24   Thomases' gamesmanship warrants dismissal of this Action or, at minimum, transfer to the

25   ─────────────────

26   [4] TFCF Entertainment Group, LLC and TFCF Corporation also have their principal place of
     business outside of the Northern District (in New York, New York), and are subsidiaries of The

27   Walt Disney Company, which is based in Los Angeles County, California. *See* Compl. ¶¶ 13-14;
     Mot. at 4-5 (the 20th Century Parties are "closely related entities," with The Walt Disney

28   Company the parent company).

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

1   Central District.

2        **1.**     *The Northern District Is An Improper Venue.*

3        The Thomases bear the burden of showing that venue is proper.  *See Piedmont Label Co.*

4   *v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of

5   showing that venue was properly laid in the Northern District of California."); *Kaia Foods, Inc. v.*

6   *Bellafiore*, 70 F. Supp. 3d 1178, 1180, 1183 (N.D. Cal. 2014) (holding that plaintiff failed to meet

7   its burden to establish that venue was proper in the Northern District).  But they cannot satisfy

8   this burden.  The Thomases allege venue in the Northern District based only on their claim that

9   the 20th Century Parties "are conducting business in this district and are subject to personal

10  jurisdiction in this district."  Compl. ¶ 4.

11       This allegation does not come close to the required showing for venue.  Indeed, the

12  Thomases appear to misunderstand the test for venue.  In their preliminary injunction motion,

13  Dkt. 12 at 7, and again in their "Statement in Opposition to Defendants' Notice of Pendency of

14  Other Action or Proceeding," Dkt. 25 at 2, the Thomases contend that personal jurisdiction is

15  coextensive with venue for entity defendants—and therefore that "district-specific" contacts are

16  unnecessary, *id.*  Not so.  The Thomases fail to grapple with the distinct test applicable in multi-

17  district states like California, which, as explained herein, *does* hinge on the parties' district-

18  specific contacts.

19       Under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(a),[5] venue is proper only if an entity

20  defendant would be subject to personal jurisdiction in the relevant judicial district *if that district*

21  *were a separate State*.  28 U.S.C. § 1391(d) ("[I]n a State which has more than one judicial

22  district and in which a defendant that is a corporation is subject to personal jurisdiction at the time

23  an action is commenced, such corporation shall be deemed to reside in any district in that State

24  within which its contacts would be sufficient to subject it to personal jurisdiction *if that district*

25  *were a separate State* . . . ." (emphasis added)); *Columbia Pictures Television v. Krypton Broad.*

26  _____

27  [5] The Thomases pleaded venue under both the general venue statute and the copyright venue
    statute.  Compl. ¶ 4.  Therefore, 20th Century addresses both provisions, but the tests are
28  substantially similar as applied here.

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

1   *of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds by Feltner v.*

2   *Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) ("Venue under 28 U.S.C. § 1400(a) is

3   proper in any judicial district in which the defendant would be amenable to personal jurisdiction *if*

4   *the district were a separate state*." (emphasis added)); *see also* Phillips & Stevenson, Fed. Civ.

5   Proc. Before Trial (The Rutter Group 2021) Venue Based on Residence, § 4:230 ("**In states with**

6   **several federal districts**: The test for *personal jurisdiction* is whether a nonresident corporation

7   has sufficient 'contacts' with the forum *state* . . . . For federal *venue* purposes, however, the

8   corporation's 'contacts' with the *district* are determinative.").[6]  None of the 20th Century Parties

9   are subject to general or specific jurisdiction in the Northern District under this test.

10      *First*, none of the 20th Century Parties would be subject to general jurisdiction in the

11   Northern District if it were a separate state. "The 'paradigm' forums in which a corporate

12   defendant is 'at home,'" and therefore subject to general jurisdiction, "are the corporation's place

13   of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549,

14   1558 (2017).[7]  As the Thomases concede, the 20th Century Parties are all Delaware corporate

15   entities, and none has a principal place of business in the Northern District. Compl. ¶¶ 11-15. By

16   contrast, three of the five (including the "primary defendant")[8] have principal places of business

17   in the Central District. *Id.* ¶¶ 11-12, 15. Nor is this the "exceptional case" where the 20th

18   Century Parties' Northern District operations are "so substantial and of such a nature as to render

19

20   ---

[6] This rule applies to corporations and unincorporated associations alike. *See* 14D Charles Alan

21   Wright, Fed. Prac. & Proc. § 3812 (4th ed., 2021 update) ("Because courts had long equated the
    residence of corporate and unincorporated associations, and because Congress gave no indication

22   of a desire to change that equivalence—indeed, quite the opposite—Section 1391(d) should be
    applied to unincorporated associations."); *see also Stohl v. Magic Mountain*, LLC, 2019 WL

23   498993, at *3 (E.D. Cal. Feb. 8, 2019) ("Although § 1391(d) refers only to corporations, courts

24   have reasoned that the prior statutory language of § 1391 implores courts to apply § 1391(d) to
    both corporations and other entities 'for whom venue was historically analyzed analogously with

25   corporations,' such as limited liability companies."); *PHH Mortg. Corp. v. Barrett, Daffin,*
    *Frappier, Treder & Weiss, LLP*, 2016 WL 1588270, at *1 n.1 (N.D. Cal. Apr. 20, 2016)

26   (substantially the same).

27   [7] *See also Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (applying the same test to an LLC).

28   [8] *See* Pls.' Mot. for Prelim. Inj., Dkt. 12, at 4.

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

1    the corporation at home" there.  *BNSF*, 137 S. Ct. at 1558.[9]

2         *Second*, none of the 20th Century Parties would be subject to specific jurisdiction in the

3    Northern District if it were a separate state.  The Thomases' claims do not "arise out of or relate

4    to the defendant's contacts with the forum," thus precluding specific jurisdiction.  *Ford Motor*

5    *Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021).  The Thomases' claims arise

6    out of: (a) the Thomases' service, in the Central District, (b) of notices of termination of a Grant,

7    executed in the Central District, (c) that the 20th Century Parties have contested by way of

8    counter-notices, prepared and served in the Central District.  The locus of the Thomases' claims is

9    thus in the Central District of California, and there is no nexus whatsoever between this action

10   and the Northern District.  Indeed, the Thomases have not even *attempted* to plead any connection

11   between the Northern District and their claims.  Because there is no "affiliation between the

12   forum and the underlying controversy," specific jurisdiction fails in the Northern District for

13   purposes of venue.[10]  *See id.* at 1025.

14        For these reasons, venue cannot lie in the Northern District.

15              **2.      *The Court Should Dismiss Rather Than Transfer The Action.***

16        When a plaintiff files an action in an improper venue, the court must *at minimum* transfer

17   the action to the proper judicial forum.  28 U.S.C. § 1406(a) (where venue is improper, the district

18   court "shall" dismiss or transfer the action).  Transfer is only appropriate, however, where it

19   serves "the interest of justice."  *Id*.  There is nothing "just" about excusing the Thomases' forum

20   shopping, their counsel's bad faith tactics, or disregard for the Federal Rules of Civil Procedure.

21   The Thomases' conduct does not warrant this Court's grace or further consumption of party and

22   _____

23   [9] That seldom-invoked doctrine is not directed at prototypical cross-jurisdictional business
     activities like those implicated by the Thomases' cryptic pleading of "significant business"
     conducted by the 20th Century Parties in the Northern District.  *See* Compl. ¶¶ 11-15.  Instead,
24   the Supreme Court proffered as an "exempl[ar]" of the doctrine *Perkins v. Benguet Consol.*
     *Mining Co*., 342 U.S. 437 (1952), in which "war had forced the defendant corporation's owner to
25   temporarily relocate the enterprise from the Philippines to Ohio," turning Ohio into "the center of
     the corporation's wartime activities" and thus subjecting it to suit there.  *BNSF*, 137 S. Ct. at
26   1558.

27   [10] Nor can the Thomases rely on the residual clause, because there *is* a sufficient nexus with the
     Central District.
28

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

1  judicial resources, and this action should be promptly dismissed.

2       Several established factors favor dismissal. *First*, the Thomases engaged in flagrant

3  forum shopping. They passed over the Central District—their home jurisdiction, the home

4  jurisdiction of the "primary defendant,"[11] and the locus of the events underlying this

5  controversy—in favor of a jurisdiction with no concrete ties to any party or any conduct

6  connected to their claims. This is forum shopping, plain and simple. Justice is not served by a

7  transfer where, as here, the plaintiff "purposefully sought to avoid [that jurisdiction] through

8  blatant forum shopping." *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1523

9  (9th Cir. 1983) (affirming district court's dismissal, rather than transfer, of action). A contrary

10  rule would incentivize forum shopping, as plaintiffs could regularly venture into improper, but

11  favored, forums without consequence; plaintiffs would have everything to gain and nothing to

12  lose from trying their luck in otherwise unsupportable venues.

13       *Second*, the Thomases' counsel acted in bad faith in an effort to secure their preferred

14  forum. As detailed in the accompanying declaration of 20th Century's counsel, after 20th

15  Century notified him of its intent to file suit, the Thomases' counsel succeeded in delaying 20th

16  Century from immediately filing suit—all the while, preparing his own filing to beat 20th Century

17  to the courthouse. *See* Petrocelli Decl. ¶¶ 6-14. Where the plaintiff has "act[ed] in bad faith,"

18  dismissal is appropriate. *Altin Havayolu Tasamaciligi Turizm Ve Tic v. Sinnarajah*, 2008 WL

19  691851, at *5 (N.D. Cal. Mar. 12, 2008).

20       *Third*, the Thomases either deliberately chose an improper venue or made an obvious

21  error that could have been avoided through basic diligence. Where a plaintiff "deliberately

22  chooses an improper forum," he must be held to the consequences of that decision. *Ryan v.

23  Hyden*, 2012 WL 3202598, at *3 (S.D. Cal. Aug. 3, 2012) (dismissing, rather than transferring,

24  improperly filed action). So too, "[t]he interest of justice is not served by allowing a plaintiff

25  [who] committed an obvious error in filing in the wrong court, and thereby imposed substantial

26  unnecessary costs on both the defendant and the judicial system, simply to transfer [his] action to

27  _____

28  [11] *See* Pls.' Mot. for Prelim. Inj., Dkt. 12, at 4.

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

1  the proper court." *Id.* (ellipses removed).

2          *Fourth*, transfer is neither necessary nor efficient under the circumstances.  A parallel

3  action is *already* pending in the Central District (the proper venue), concerning the same dispute.

4  Petrocelli Decl. ¶ 14; Toberoff Decl., Ex. A.  Indeed, the Thomases concede that these actions are

5  "duplicative, mirror-image[s]" of each other, and that they concern "identical" issues and

6  "effectively identical" parties.[12]  Transfer is therefore not necessary to ensure a full and fair

7  adjudication of this controversy.  A transfer would only waste judicial resources, saddling the

8  Central District with two separate but overlapping proceedings to manage.  Accordingly,

9  dismissal is the appropriate remedy for this action's venue defect.

10         **B.      Alternatively, This Action Should Be Transferred To The Central District Of California Because The Northern District Is An Inconvenient Venue.**

11

12         Even if this Court were to find that venue is proper in the Northern District, it should still

13  transfer this action to the Central District "[f]or the convenience of parties and witnesses" and "in

14  the interest of justice."  *See* 28 U.S.C. § 1404(a).  The Thomases can point to no principled reason

15  for the parties to litigate their Central District-focused dispute in a forum where no party and no

16  counsel resides.  Litigating in the Northern District would impose a substantial burden on the

17  parties and potential witnesses alike, all while bogging down this Court with a foreign dispute.

18         "To determine whether transfer is appropriate, the court first examines whether the action

19  could have been brought in the district to which transfer is sought."  *Saunders v. USAA Life Ins.*

20  *Co.*, 71 F. Supp. 3d 1058, 1060 (N.D. Cal. 2014).  Then, "[i]f the proposed district is a viable one,

21  the court then goes through an 'individualized, case-by-case consideration of convenience and

22  fairness.'"  *Id.* (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)).  Transfer is warranted

23  under this test.

24

25

26  _____
[12] *See* Pls.' Mot. for Prelim. Inj., Dkt. 12, at 1, 4-5.  The Thomases sued 20th Century along with
27  other "closely related entities," *see id.* at 4, but only 20th Century (the grantee) is a necessary party.  *See* Compl. ¶ 28 (the Thomases transferred their rights in the *Hunters* Screenplay to 20th
28  Century); Kennedy Decl. ¶¶ 3-4.

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

1

   **1.** *This Dispute Could Have Been Brought In The Central District.*

2      An action could have been brought in a transferee court if "(1) the [transferee] court . . .

3  ha[s] complete personal jurisdiction over defendants; (2) the [transferee] court . . . ha[s] subject

4  matter jurisdiction; and (3) the [transferee] court is the proper venue had the claim originally been

5  brought in that court." *Shalaby v. Newell Rubbermaid, Inc.*, 2007 WL 3144357, at *4 (N.D. Cal.

6  Oct. 24, 2007).  All three requirements are easily met here.

7      *First*, the Central District has personal jurisdiction over the 20th Century Parties.[13]  Three

8  of the five defendants have principal places of business in California, such that they are subject to

9  general jurisdiction there.  Compl. ¶¶ 11-12, 15; *BNSF*, 137 S. Ct. at 1558 (general jurisdiction

10  where entity has principal place of business).  In addition, all of the parties' suit-related conduct

11  occurred in California, providing a basis for specific jurisdiction as well.  *See* Petrocelli Decl. ¶¶

12  2-5; Kennedy Decl. ¶¶ 3-4; *Ford*, 141 S. Ct. at 1026 (specific jurisdiction where the suit "arise[s]

13  out of or relate[s] to the defendant's contacts with the forum").

14      *Second*, the Central District has subject matter jurisdiction over this federal claim.  The

15  Thomases bring a declaratory relief claim under the Copyright Act, over which federal courts

16  have exclusive jurisdiction.  *See* 28 U.S.C. § 1338(a); *see also id.* § 1331.

17      *Third,* and finally, the Central District is the proper venue.  As explained in Section

18  IV.A.1., *supra*, venue is proper for an entity defendant in a multi-district state like California in

19  any district where that defendant would be subject to personal jurisdiction if the district were a

20  separate state.  Because the Central District is the exclusive source of the 20th Century Parties'

21  jurisdictionally relevant contacts in California, the venue and personal jurisdiction analyses are

22  coextensive as applied to that district.[14]  All suit-related conduct of the 20th Century Parties

23  occurred in the Central District, and most are "at home" there as a general matter as well.

24      Thus, the Central District satisfies the requirements for personal jurisdiction, subject

25

26  ───────────────

   [13] For the avoidance of doubt, the 20th Century Parties maintain that only the grantee of the rights
27  in the *Hunters* Screenplay, 20th Century itself, is the appropriate party in this action.

28  [14] Of course, this proposition does not hold in any other district.

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

matter jurisdiction, and venue.[15]

## 2.    *Considerations Of Convenience And Fairness Support Transfer To The Central District.*

The Central District is plainly the more appropriate and more convenient forum for this litigation.  In assessing the convenience of a forum under 28 U.S.C. § 1404(a), "courts must consider the following three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice."  *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).  The "interests of justice" factor, in turn, encompasses the following considerations:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  These factors overwhelmingly support transfer out of this forum and into the Central District.

### a.    *Convenience of the Parties*

The convenience of the parties unequivocally favors the Central District.  Counsel for all parties are based in the Central District, specifically, in Los Angeles County.[16]  The Thomases themselves reside in the Central District, and the "primary defendant"[17] (Twentieth Century Fox Film Corporation, *i.e*., "TCFFC") has its principal place of business in the Central District. Compl. ¶¶ 9-11.  The remaining parties "are closely related entities as part of TCFFC's corporate

---

[15] Moreover, if this Court has any pause about venue in the Central District, then it *must* find venue improper in the Northern District—where the 20th Century Parties' contacts are vastly more attenuated—and rule instead on that non-discretionary ground.  *See* 28 U.S.C. § 1406(a).

[16] In the Thomases' preliminary injunction motion, they point out that defense counsel's firm has an office in San Francisco.  *See* Pls.' Mot. for Prelim. Inj., Dkt. 12, at 7.  However, no member of the 20th Century Parties' legal team works out of that office.

[17] *See id*. at 4.

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

hierarchy,"[18] and have little to no independent role in this controversy.  Nonetheless, two of the four have a principal place of business in the Central District, Compl. ¶¶ 12, 15, and the remaining two are located outside of any practicable forum, *id*. ¶¶ 13-14 (principal place of business in New York).  No party to this case, nor their counsel, has any comparable ties to the Northern District.  Because all counsel and nearly all parties (including the Thomases themselves) are based in the Central District, and none are based in the Northern District, the Thomases cannot seriously contend they have selected a convenient forum.[19]

b.      *Convenience of the Witnesses*

The convenience of the witnesses also favors the Central District.  All or nearly all potential witnesses are located in the Central District.[20]  Probable witnesses include representatives of Los Angeles-based Twentieth Century Fox Film Corporation as well as the Thomases themselves—all residing within the Central District's bounds.  Kennedy Decl. ¶ 5.

c.      *Interests of Justice*

The interests of justice reinforce that the Central District is the superior venue for this action:

***Location of Relevant Agreements.***  The "relevant agreements," *i.e.*, the Option Agreement and the Grant, were negotiated and executed in the Central District.  Kennedy Decl. ¶¶ 3-4; *see Jones*, 211 F.3d at 498.  The Thomases' termination notices and the 20th Century Parties' counter-notices were likewise prepared and served in the Central District.  Kennedy Decl. ¶¶ 3-4; Petrocelli Decl. ¶¶ 2-7.  No relevant agreements were prepared, negotiated, executed, or served in the Northern District.  This factor thus favors the Central District.

---

[18] Pls.' Mot. for Prelim. Inj., Dkt. 12, at 4.

[19] Indeed, the Thomases' main counter in their preliminary injunction motion is that the Northern District is not *that* inconvenient, because there are "frequent[]" flights between Los Angeles and San Francisco, and those flights are not unduly "difficult" or "expensive."  Pls.' Mot. for Prelim. Inj., Dkt. 12, at 7.  But the ready availability of flights does nothing to change the fact that litigating in the Northern District places an added burden on all parties and all counsel.

[20] Although the 20th Century Parties believe this case can be resolved by motion practice, it would be shortsighted to rely on that belief to permit proceedings in an inconvenient forum.

*Familiarity with Governing Law.*  The relevant agreements are governed by California law, and copyright termination questions are governed by federal law.  This factor is in equipoise.

*Plaintiffs' Choice of Forum.*  The Thomases' choice of forum should not be accorded substantial weight.  "If there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference."  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).  "Deference to the plaintiff's choice of venue is further diminished 'if the moving party establishes one or more of the following factors: (1) the operative facts have not occurred within the forum; (2) the forum has no particular interest in the parties or subject matter; (3) the forum is not the primary residence of either the plaintiff or defendant; or (4) the subject matter of the litigation is not substantially connected to the forum.'"  *Metz*, 674 F. Supp. 2d at 1146; *see also Williams*, 157 F. Supp. 2d at 1106 ("[T]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint.").  The 20th Century Parties can establish *all* of these factors.

The Thomases raced to the courthouse to beat 20th Century to filing this action, after they received notice of 20th Century's intent to sue.  They filed in a district that was a total stranger to the parties and their dispute, in the hope they could secure a favorable forum.  The Thomases thus engaged in brazen forum shopping.  So too, it is undisputed that the operative facts occurred outside the Northern District, and that the Northern District is not the home jurisdiction of any party.  *See generally* Compl. ¶¶ 9-15; Petrocelli Decl. ¶¶ 2-5; Kennedy Decl. ¶¶ 3-4.  The subject matter of the litigation likewise has no nexus to the Northern District, and the Northern District has no interest in this controversy or the parties.  The necessary parties and this dispute are situated squarely in the Central District, and that district alone.

*Parties' Contacts with the Forum.*  The parties have, at most, weak contacts with the Northern District—juxtaposed with their pervasive and longstanding contacts with the Central District.  The Thomases are long-time residents of the Central District.  The 20th Century Parties all have extensive business contacts with the Central District—the hub of the film industry—and

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

most have their principal place of business there.  Meanwhile, they have no material contacts with the Northern District, except to the extent they do business nationwide.  This factor thus favors venue in the Central District.

**Contacts Between the Cause of Action and the Forum.**  The Thomases' cause of action bears no relation whatsoever to their chosen forum.  The Thomases bring a declaratory relief claim concerning (i) the validity of copyright termination notices prepared and served in the Central District, (ii) that seek to terminate a Grant, negotiated and executed in the Central District, (iii) made by the Thomases, Central District residents, (iv) to Twentieth Century Fox Film Corporation, which has its principal place of business in the Central District.  The Thomases' claim has nothing to do with the Northern District, and everything to do with the Central District.  This factor also favors venue in the Central District.

**Costs of Litigation.**  Holding this proceeding in the Northern District will needlessly increase the costs of the litigation.  Because the parties and counsel are based in the Central District, they will need to travel by plane to attend proceedings in the Northern District.  These travel needs will cause the parties incur expenses for both the travel itself and the accompanying attorney time.  Moreover, if this case goes to trial, a full trial team will need to relocate to the Northern District.  The probable witnesses, too, are based in the Central District and would need to travel by plane to testify.  These travel expenses, and the corresponding expenses for obtaining short-term local accommodation, would make the litigation more costly—with no commensurate benefit.  Accordingly, this factor favors venue in the Central District.

**Availability of Compulsory Process and Ease of Access to Proof.**  The 20th Century Parties do not anticipate jurisdictional obstacles to obtaining compulsory process or access to proof in either district.  These factors are in equipoise.

In sum, most of the interests of justice factors favor venue in the Central District, and *none* favor venue in the Northern District.  The convenience of the parties and the convenience of the witnesses also overwhelmingly favor the Central District.  Nor would a transfer work any hardship on the Thomases; after all, it would shift this case to the Thomases' own home

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB

1  jurisdiction.  The decision for this Court, then, is an easy one: all Section 1404(a) factors support

2  a transfer of venue to the Central District, and *there are no countervailing considerations*.  *See*

3  *Mitchell v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 12867746, at *4 (C.D. Cal. Oct. 29, 2015)

4  ("Given most of the *Jones* factors favor transfer and given Plaintiff is clearly attempting to forum

5  shop, this motion to transfer is an easy one for the Court to resolve.").

6        This Court should reject the Thomases' unjustifiable choice of venue and, if it does not

7  dismiss the action outright, transfer it to the Central District.  The parties' dispute belongs in the

8  one venue where the parties, their counsel, the underlying events, and the probable witnesses can

9  be found: the Central District.  The Thomases' resistance to this natural venue is brazen forum

10  shopping, and nothing more.

11  **V.**     **CONCLUSION**

12        The 20th Century Parties' motion to dismiss this action for improper venue should be

13  granted.  In the alternative, this Court should transfer this action to the Central District of

14  California.

15

16        Dated:  April 22, 2021                     O'MELVENY & MYERS LLP

17

18                                               By:        */s/ Daniel M. Petrocelli*
                                                        Daniel M. Petrocelli
19

20                                               Attorneys for Twentieth Century Fox Film
                                                 Corporation; TFCF Corporation; TFCF
21                                               Entertainment Group, LLC; 20th Century
                                                 Studios, Inc.; and The Walt Disney Company
22

23

24

25

26

27

28

DEFS' MOT. TO DISMISS OR TRANSFER
CASE NO. 3:21-CV-02720-LB